FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 SEP 28  PM 3: 53

LORETTA G. WHYTE
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: VIOXX | ) | MDL No.1657 |
| Products Liability Litigation | ) | |
| | ) | SECTION: L |
| This Document Relates to: | ) | |
| Plaintiff 1,Abrenda W. Anderson an individual;) | | HON. ELDON E. FALLON |
| Plaintiff 2, Carol L. Angrisano an individual; ) | | |
| Plaintiff 3, Regina K. Arriaga an individual; ) | | MAG. JUDGE KNOWLES |
| Plaintiff 4, Rilla Bennett an individual; ) | | |
| Plaintiff 5, Joanne Bolden an individual; ) | | COMPLAINT |
| Plaintiff 6, Henrietta H. Bradley an individual; ) | | |
| Plaintiff 7, Nancy Bradley an individual; ) | | |
| Plaintiff 8, Cleve Bradshaw an individual; ) | | DEMAND FOR JURY |
| Plaintiff 9, Joseph Brown an individual; ) | | TRIAL |
| Plaintiff 10, Freddy Bullard an individual; ) | | |
| Plaintiff 11, Maggie Bunt an individual; ) | | **06-6700** |
| Plaintiff 12, Patricia Byrd an individual; ) | | |
| Plaintiff 13, Oliver Campbell an individual; ) | | **SECT. L MAG. 3** |
| Plaintiff 14, Patricia A. Campbell an individual;) | | |
| Plaintiff 15, Raymond Carden an individual; ) | | |
| Plaintiff 16, Marcus Chatman an individual; ) | | |
| Plaintiff 17, Martha Cline can individual; ) | | |
| Plaintiff 18, Annie Cochran an individual; ) | | |
| Plaintiff 19, Judy Cocker an individual; ) | | |
| Plaintiff 20, Timothy Coleman an individual; ) | | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **MERCK & CO., INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

Fee 350.00
___ Process_____
X Dktd_____
___ CtRmDep_____
___ Doc. No_____

1

## COMPLAINT

Comes Now Plaintiffs, Abrenda W. Anderson, Carol L. Angrisano, Regina K. Arriaga, Rilla Bennett, Joanne Bolden, Henrietta H. Bradley, Nancy Bradley, Cleve Bradshaw, Joseph Brown, Freddy Bullard, Maggie Bunt, Patricia Byrd, Oliver Campbell, Patricia A. Campbell, Raymond Carden, Marcus Chatman, Martha Cline, Annie Cochran, Judy Coker, and Timothy Coleman by and through their undersigned counsel and hereby sues the Defendant, **MERCK & CO., INC**, and allege as follow

## PARTIES

1.      Plaintiff, Abrenda W. Anderson, at all times material hereto, has resided at 301 Sheridan Road, Birmingham in the State of Alabama. Plaintiff, Abrenda W. Anderson, ingested the drug Vioxx®.

2.      Plaintiff, Carol L. Angrisano, at all times material hereto, has resided at 4537 Bonnett Way, Birmingham in the State of Alabama. Plaintiff, Carol Lenora Angrisano, ingested the drug Vioxx®.

3.      Plaintiff, Regina K. Arriaga, at all times material hereto, has resided at 1354 Spruce Street, Mobile in the State of Alabama. Plaintiff, Regina K. Arriaga, ingested the drug Vioxx®.

4.      Plaintiff, Rilla Bennett, at all times material hereto, has resided at 105 Annie Lane, Pleasant Grove in the State of Alabama. Plaintiff, Rilla Bennett, ingested the drug Vioxx®.

5.      Plaintiff, Joanne Bolden, at all times material hereto, has resided at 1314 Depot Street, Birmingham in the State of Alabama. Plaintiff, Joanne Bolden, ingested the drug Vioxx®.

2

6.    Plaintiff, Henrietta H. Bradley, at all times material hereto, has resided at 1110 Grant Avenue, Prichard in the State of Alabama. Plaintiff, Henrietta H. Bradley, ingested the drug Vioxx®.

7.    Plaintiff, Nancy Bradley, at all times material hereto, has resided at 136 Stonehaven Drive, Pelham in the State of Alabama. Plaintiff, Nancy Bradley, ingested the drug Vioxx®.

8.    Plaintiff, Cleve Bradshaw, at all times material hereto, has resided at 525 Esplanade Drive, Birmingham, in the State of Alabama. Plaintiff, Cleve Bradshaw, ingested the drug Vioxx®.

9.    Plaintiff, Joseph Brown, at all times material hereto, has resided at 4216 42nd Avenue, North, Birmingham in the State of Alabama. Plaintiff, Joseph Brown, ingested the drug Vioxx®.

10.    Plaintiff, Freddy Bullard, at all times material hereto, has resided at 17885 US Highway 31, Hope Hull in the State of Alabama. Plaintiff, Freddy Bullard , ingested the drug Vioxx®.

11.    Plaintiff, Maggie Bunt, at all times material hereto, has resided at 205 Clark Drive, Ragland in the State of Alabama. Plaintiff, Maggie Bunt, ingested the drug Vioxx®.

12.    Plaintiff, Patricia Byrd, at all times material hereto, has resided at 518 Marsh Avenue, Bessemer in the State of Alabama. Plaintiff, Patricia Byrd, ingested the drug Vioxx®.

13.    Plaintiff, Oliver Campbell, at all times material hereto, has resided at P.O. Box 20054, Montgomery in the State of Alabama. Plaintiff, Oliver Campbell, ingested the drug Vioxx®.

14.    Plaintiff, Patricia A. Campbell, at all times material hereto, has resided at 1263 Pecan Street, Mobile in the State of Alabama. Plaintiff, Patricia A. Campbell, ingested the drug Vioxx®.

15.    Plaintiff, Raymond Carden, at all times material hereto, has resided at 11991 County Road 51, Jemison in the State of Alabama. Plaintiff, Raymond Carden, ingested the drug Vioxx®.

16.    Plaintiff, Marcus Chatman, at all times material hereto, has resided at P.O. Box 170174, Tarrant in the State of Alabama. Plaintiff, Marcus Chatman, ingested the drug Vioxx®.

17.    Plaintiff, Martha Cline, at all times material hereto, has resided at 13541 Rock House Road, Vance in the State of Alabama. Plaintiff, Martha Cline, ingested the drug Vioxx®.

18.    Plaintiff, Annie Cochran, at all times material hereto, has resided at 3112 51st Avenue North, Birmingham in the State of Alabama. Plaintiff, Annie Cochran, ingested the drug Vioxx®.

19.    Plaintiff, Judy Cocker, at all times material hereto, has resided at 4510 Cades Cove Drive, Gardendale in the State of Alabama. Plaintiff, Judy Cocker, ingested the drug Vioxx®.

20.    Plaintiff, Timothy Coleman, at all times material hereto, has resided at 1615 8th Avenue South, Pell City in the State of Alabama. Plaintiff, Timothy Coleman, ingested the drug Vioxx®.

21.    Plaintiffs, Abrenda W. Anderson, Carol L. Angrisano, Regina K. Arriaga, Rilla Bennett, Joanne Bolden, Henrietta H. Bradley, Nancy Bradley, Cleve Bradshaw, Joseph Brown, Freddy Bullard, Maggie Bunt, Patricia Byrd, Oliver Campbell, Patricia A. Campbell, Raymond Carden, Marcus Chatman, Martha Cline, Annie Cochran, Judy Coker, and Timothy Coleman

(herein referred to as "**PLAINTIFFS**") properly join their claims pursuant to Rule 20(a) of Federal Rules of Civil Procedure

22.     Defendant, **MERCK & CO., INC.,** (herein referred to as "**MERCK**") is a pharmaceutical company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

23.     Defendant, **MERCK**, was and is in the business of profiting from the designing, manufacturing, marketing, distributing and/or selling of the brand-name prescription drug Vioxx®.

24.     This action arises out of the manufacturing, selling, distributing, marketing and/or otherwise promoting of Vioxx® by Defendant, **MERCK,** in the State of Alabama without proper warnings as to the dangers associated with its use.

25.     The pharmaceutical drug Vioxx®, manufactured by Defendant, **MERCK,** is defective, dangerous to human health, and is unfit and unsuitable to be marketed and sold in commerce.

26.     At all times material hereto, Defendant, **MERCK,** and its employees, were authorized and did conduct business in the State of Alabama.

## JURISDICTION AND VENUE

27.     Jurisdiction is founded under the provisions of 28 U.S.C § 1332(a), et seq., which grants this court jurisdiction in civil actions on the basis of diversity of citizenship where the matter in controversy, exclusive of interests and costs, exceeds seventy-five thousands dollars ($75,000.00).

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendant, MERCK, advertised its drug Vioxx® in this District, received substantial compensation and profits from the sale of Vioxx® in this District, and made material omissions and misrepresentations and breached warranties in this District.

29.     Pursuant to Pre-Trial Order 11 by Judge Fallon, this action should take place in the United States District Court of Eastern District of Louisiana. Judge Fallon ordered all Plaintiffs to directly file any actions in reference to Vioxx® Product Liability Litigation to directly file their actions in the Eastern District of Louisiana.  The Eastern District of Louisiana was selected by the Judicial Panel on Multidistrict Litigation as the designated jurisdiction to hear cases involving Vioxx® Products Liability pursuant to Docket Number 1657.

## GENERAL ALLEGATIONS

30.     At all times material, Defendant, **MERCK,** was in the business of developing, manufacturing, selling, distributing, labeling, marketing and/or promoting Vioxx® (rofecoxib) for consumer use by prescription.  Defendant, **MERCK,** did develop manufacture, design, package, market, sell and distribute, Vioxx®, in the State of Alabama at all times relevant to this action, but withdrew Vioxx® from the market on September 29, 2004.

31.     Vioxx®, a pain medication, is a Cox-2 inhibitor, which is designed to produce prostaglandins at inflammatory sites, and to produce prostacyclin, a vasodilator and an inhibitor of platelet aggregation.

32.     Defendant, **MERCK,** submitted an Application to Market a New Drug for Human Use (hereinafter "NDA") for rofecoxib to the United States Food and Drug Administration (hereinafter the "FDA") on November 23, 1998, for tablets at doses of 12.5 mg

6

and 25 mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of dysmenorrhea. This application was denoted NDA 21-042 by the FDA.

33.     Defendant, **MERCK,** also submitted a NDA for rofecoxib to the FDA on November 23, 1998, for oral suspension at doses of 12.5 mg/mL and 25 mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, an the treatment of primary dysmenorrhea. This application was denoted as NDA 21-052 by the FDA.

## COUNT I

## <u>FAILURE TO WARN</u>

**PLAINTIFFS** adopts by reference all of the General Allegations contained in Paragraphs 1 through 33 above, each inclusive, as though fully set for herein, pursuant to Rule 10(b & c), of the Federal Rule of Civil Procedure.

34.     On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 for rofecoxib, for the relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.

35.     At the time that Vioxx® was approved by the FDA, the labeling for rofexcoxib (in the section entitled "Special Studies-Upper Endoscopy in Patients with Osteoarthritis") stated, "Treatment with VIOXX 25 mg daily or 50 mg daily was associated with a significantly lower percentage of patients with endoscopic gastroduodental ulcers than treatment with ibuprofen 2400 mg daily. However, the studies cannot rule out at least some increase in the rate of endoscopic gastroduodenal ulcers when comparing VIOXX to placebo."

36.     The "Warnings" section of the labeling for rofecoxib at the time the drug was approved by the FDA, contains a section, "Gastrointestinal (GI) effects—Risk of GI Ulceration, Bleeding and Perforation."

37.     Defendant, **MERCK,** submitted a Supplemental New Drug Application (hereinafter "sNDA") with the goal of establishing a gastrointestinal safety claim for rofecoxib. In conjunction with the sNDA, Defendant, **MERCK,** conducted a study known as the VIGOR (VIOXX GI Outcomes Research) Protocol, No. 08804, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-09 or Naproxen in Patients With Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was conducted from January 6, 1999, through March 17, 2000.

38.     The objectives of the VIGOR study were to "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking Vioxx® 50 mg daily compared to patients in the group taking naproxen 1000 mg/day" and to "study the safety and tolerability" of Vioxx® in patients with rheumatoid arthritis.

39.     The VIGOR study demonstrated that Vioxx is associated with lower incidence of serious upper gastrointestinal adverse events of major bleeding, perforation, and obstruction compared to naproxen.

40.     However, the VIGOR study also showed a higher cumulative rate of serious cardiovascular thromboembolic adverse events (such as heart attacks, angina pectoris, and peripheral vascular events) in the Vioxx® group compared to the naproxen group.

41.     An FDA report, written by Shari L. Targum M.D., a Project Manager for the FDA's Division of Anti-Inflammatory Drug Products, dated February 1, 2000, states: "By November 18, 1999, the Data and Safety Monitoring Board of the VIGOR study, a committee independent for Defendant, **MERCK,** the sponsor, had become concerned over the "excess deaths and cardiovascular events experienced in Group A [Vioxx] compared to Group B [naproxen}."

8

42. In June of 2000, in connection with industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Defendant, **MERCK,** is a member and corporate sponsor, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and stroke. Not only did Defendant, **MERCK,** do nothing to accurately publish these studies, or warn consumers and prescribing doctors, Defendant, **MERCK,** also denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today, *Spin War Aside, Lessons Emerge from COX-2 Trials,* in August of 2000.

43. Defendant, **MERCK,** concealed the serious cardiovascular risks associated with Vioxx® because a successful launch of Vioxx® was viewed as critical for the success of Defendant, **MERCK,** and safety concerns over hypertension, thrombosis, edema, and/or cardiovascular events would have drastically impacted the positioning in the market of Defendant, **MERCK,** as compared to its competitor drug, Celebrex (celecoxib), which had been placed into the market by Pharmacia and Pfizer three months prior to the launch of Vioxx®.

44. Defendant, **MERCK,** continued to deny the ill health effects associated with Vioxx® while at the same time reaping benefits obtained through its non-disclosure and concealment. Defendant, **MERCK,** engaged in a massive physician and direct-to-consumer advertising and sampling program and gained continued increases in the market share, which enhanced the financial stability of Defendant, **MERCK,** to the detriment of its consumers. As a result of the scheme of Defendant, **MERCK,** it reaped more than $2 billion in profit in the year 2000 alone, and garnered an approximate 23% share of the market.

45. The FDA sent a letter to Defendant, **MERCK,** dated December 16, 1999, stating that certain Vioxx® promotional pieces "are false and misleading because they contain

representations of Vioxx's safety profile, unsubstantiated comparative claims, and are lacking in fair balance."

46. On June 22, 1999, Defendant, **MERCK,** contracted with Peter Holt, M.D., to conduct Vioxx® promotional audio conferences, using content provided by Defendant, **MERCK,** which were to be presented to health care professionals as educational programs.

47. Dr. Peter Holt conducted six Vioxx promotional audio conferences (one on June 8, 2000; one on June 13, 2000; one on June 16, 2000, and three on June 21, 2000), which were arranged by Defendant, **MERCK,** presented on behalf of Defendant, **MERCK,** and moderated by employees of Defendant, **MERCK.** Some of the content of these conferences was later found by the FDA to be "false or misleading in that they minimized the MI results of the VIGOR study, minimized the Vioxx/Coumadin drug interaction, omitted important risk information, made unsubstantiated superiority claims, and promoted Vioxx® for unapproved uses and an unapproved dosing regimen."

48. In response to the growing public expressions of concern over the cardiovascular safety profile of Vioxx®, Defendant, **MERCK,** issued a press release entitled "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx®," dated May 22, 2001. This press release states that Vioxx® has a "favorable cardiovascular safety profile." The FDA would later tell Defendant, **MERCK:**

> "Your claim in the press release that Vioxx® has a favorable cardiovascular profile is simply incomprehensible, given the rate of MI [myocardial infarction] and serious cardiovascular events compared to naproxen. The implication that Vioxx®s cardiovascular profile is superior to the other NSAIDs is misleading; in fact, serious cardiovascular events were twice as frequent in the Vioxx® treatment group...as in the naproxen treatment group...in the VIGOR study."

10

49. Despite admonishments from the FDA for its fraudulent marketing, Defendant, **MERCK,** continued to increase sales of Vioxx® and profits by withholding information from **PLAINTIFFS** their prescribing doctors, the consuming public, and the health care industry. For example, in November of 2000, Defendant, **MERCK,** orchestrated the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with Vioxx® consumption over naproxen consumption.

50. On or about August 29, 2001, the Journal of American Medical Association (JAMA) published a peer reviewed epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, showing that Defendant, **MERCK,** had concealed the risk of developing a "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") among Vioxx® users in the clinical trials of Defendant, **MERCK,** including VIGOR. The study found statistically increased risk (of the magnitude of a four to five-fold increase) for developing serious cardiovascular events, including heart attacks, in Vioxx® users over placebo and naproxen.

51. In the JAMA study, the authors stated, "By decreasing PG12 production, [Vioxx®] may tip the natural balance between prothrombotic thomboxane A2 and antithrombotic PG12, potentially leading to an increase in thrombotic cardiovascular events."

52. On September 17, 2001, Thomas W. Abrams, R., Ph., MBA, Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin, President and CEO of Defendant, **MERCK,** relating to "promotional activities and materials for the marketing of Vioxx® (refecoxib) tablets."

11

53.     The Warning Letter, the *third* such letter from FDA concerning Vioxx® to

Defendant, **MERCK**, stated that Defendant, **MERCK**, had "engaged in a promotion campaign

for Vioxx® that minimizes the potentially serious cardiovascular findings that were observed in

the Vioxx® Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the

safety profile for Vioxx®." The letter further states:

> "Specifically, your promotional campaign discounts the fact that the VIGOR
> Study, patients on Vioxx® were observed to have four to five folds increased in
> Myocardial infarctions (MIs) compared to patients on the comparator non-
> Steroidal anti-inflammatory drug (NSAID), Naprosyn (naproxen)."

54.     The eight-page Warning Letter outlines, in detail, the conduct of Defendant,

**MERCK,** that supports the FDA's issuances of the Warning Letter, and makes the following

"Conclusions and Requested Actions":

> "The promotional activities and material described above minimize the potentially
> serious cardiovascular findings that were observed in the VIGOR study,
> minimize the Vioxx/Coumadin drug interaction, omit crucial risk information
> associated with Vioxx® therapy, contain unsubstantiated comparative claims, and
> promote unapproved uses. On December 16, 1999, we also objected to your
> dissemination of promotional materials for Vioxx® that misrepresented Vioxx®'s
> safety profile, contained unsubstantiated comparative claims, and lacked fair
> balances.
>
> Due to the seriousness of these violations, and the fact that your violative
> promotion of Vioxx® has continued despite our prior written notification regarding
> similar violations, we request that your provide a detailed response to the issues raised in
> this Warning Letter on or before October 1, 2001.
>
> This response should contain an action plan that includes a comprehensive plan to
> disseminate corrective messages about the issues discussed in this letter to the
> audiences that received these misleading messages. This corrective action plan
> should also include:
>
>> Immediately ceasing all violative promotional activities, and the
>> dissemination of all violative promotional materials for Vioxx®.
>>
>> Issuing a "Dear Healthcare Provider" letter to correct false or
>> misleading impressions and information. The proposed letter should
>> be submitted to us for review prior to its release. After agreement

12

is reached on the conduct and audience, the letter should be disseminated by direct mail to all healthcare providers who were, or may have been exposed to the violative promotion."

55.    Defendant, **MERCK,** knew the warnings contained in the label were ineffective and Defendant, **MERCK,** used its sales force and other marketing efforts to downplay (rather to improve) its communication of the risks posed by Vioxx®. For example, in its 2001 annual report, Defendant, **MERCK,** states: "The Company also noted that a number of state and federal lawsuits, involving individual claims as well as purported class actions, have been filed against the Company with respect to Vioxx...these lawsuits include allegations regarding gastrointestinal bleeding and cardiovascular events. The Company believes that these lawsuits are without merit and will vigorously defend them."

56.    An article entitled "Why Do Cyclooxygenase-2 Inhibitors Cause Cardiovascular Events?" authored by Dr. Bing, Dr. Lomnicka, and others at the Department of Experimental Cardiology at the Huntington Medical Research Institute was published in the journal *Pharmacology* on February 6, 2002. The authors explained that a selective Cox-2 inhibitor, such as Vioxx®, could promote adverse cardiovascular events by tipping the balance of prostacyclin and thromboxane in favor of thromboxane. This imbalance promotes both platelet aggregation and vasoconstriction, which can lead to catastrophic cardiovascular events, including stroke, heart attack, and pulmonary embolism.

57.    In response to a growing body of evidence of Vioxx®'s safety problems, Defendant, **MERCK,** attempted to obfuscate this negative information by authoring and sponsoring reviews that set forth the unsubstantiated claim that naproxen had a cardio-protective effect and therefore accounted for the cardiovascular risks among it Vioxx® users. However, this theory was debunked in January of 2002, by a Vanderbilt University School of Medicine

human epidemiologic peer-reviewed study published in *The Lacent*. The *Lancet* article concluded that there is an absence of a protective effect of naproxen or other non-aspirin, non-steroidal anti-inflammatory drugs on the risk of coronary heart disease.

58.    In approximately April 2002, Defendant, **MERCK,** was required to place cardiovascular warnings on its Vioxx® labeling based on the results of The VIGOR study.  In addition, Defendant, **MERCK,** was required to place new label warnings relaying that 50 mg per day of Vioxx® is not recommended for chronic use.

59.    An article by Dr. Solomon and others at Harvard Medical School, entitled "Relationship between Selective Cyclooxygease-2 and Acute Myocardial Infarction in Older Adults," was published in the April 2004 edition of the journal *Circulation*.  The Harvard authors concluded the following from their study:  "[R]ofecoxib [Vioxx] use was associated with an elevated relative risk of AMI [acute myocardial infarction] compared with celecoxib [Celebrex] use and no NSAID use.  Dosages of rofecoxib [greater than] 25 mg were associated with a higher risk than dosages [less than or equal to] 25 mg."

60.    An article by H.K. Choi in the May 2004 edition of the *American Journal of Medicine*, entitled "Effects of Rofecoxib and Naproxen on Life Expectancy Among Patients with Rheumatoid Arthritis: A Decision Analysis," concludes the following:

> "Our analysis suggests a longer life expectancy with naproxen than rofecoxib [Vioxx]…except those at low risk for myocardial infarction or at a high risk for gastrointestinal toxicity."

61.    David Graham, M.D., an employee of the Food & Drug Administration, made a poster presentation entitled "Risk of Acute Myocardial Infarction and Sudden Cardiac Death with Use of COX-2 Selective and non-Selective NSAIDs" at the 20th International Conference

14

on Pharmacoepidemiology and Therapeutic Risk Management, held from August 22-25, 2004, in Bordeaux, France. The data for the presentation was taken from a study done by Kaiser Permanente under a contract funded by the FDA, and concluded that Vioxx® taken at more than 25 mg per day increased the risk of heart attack and sudden cardiac death by 300% in those enrolled in the Kaiser Permanente study.

62.     On August 26, 2004, Peter Kim, President of the Research Laboratories of Defendant, **MERCK**, issued a press release stating the following: "Merck strongly disagrees with the conclusions of an observational analysis by Graham, et al., presented at an international meeting this week...Merck stands behind the efficacy and safety, including cardiovascular safety of Vioxx®."

63.     On September 27, 2004, Defendant, **MERCK** informed the FDA that the Data Safety Monitoring Board for an ongoing long-term study of Vioxx®, known as the APPROVe study, had recommended that the study be stopped early for safety reasons.

64.     The APPROVe study was not intended to be a cardiovascular risk assessment study. Defendant, **MERCK**, commissioned it to look at the effect of Vioxx on people at risk for developing recurrent colon polyps.

65.     The APPROVe study demonstrated an increased risk of cardiovascular adverse events, including heart attacks and strokes, for the Vioxx® population relative to the placebo population in the study, particularly for people taking Vioxx® for more than 18 months.

66.     Representatives for the Defendant, **MERCK,** informed the FDA in a September 28, 2004 meeting that Defendant, **MERCK,** would withdraw Vioxx® from the United States market.

15

67.    Defendant, **MERCK,** and the FDA each announced the withdrawal of Vioxx® from the United States market on September 30, 2004.  Defendant, **MERCK,** also announced worldwide withdrawal on the same day.

68.    An FDA analysis, based on data from the Kaiser Permanente study, projects that 27,785 heart attacks and sudden cardiac deaths "would have been avoided" had Celebrex, another Cox II inhibitor, been used instead of Vioxx®.

69.    Approximately 20 million people in the United States took Vioxx® between its introduction in 1999 and its withdrawal in 2004, and, during this time period, Defendant, **MERCK,** engaged in a common scheme in marketing, distributing and/or selling Vioxx® under the guise that it was safe and efficacious for people similar to that of the **PLAINTIFFS**.

70.    At all times relevant to this litigation, Defendant, **MERCK,** enjoyed significant market share based upon false claims of Vioxx® efficacy, safety, and superiority which resulted as a result of the actions of Defendant, **MERCK,** including very aggressive marketing programs which included financial incentives to sales teams, infusion of some 700 new sales representatives, and a massive direct-to-consumer advertising and physician sampling program. Defendant, **MERCK,** encouraged the prescription and use of Vioxx® through aggressive marketing campaigns, including detailing of physicians by Defendant, **MERCK,** and others as well as direct-to-consumer advertising.  As such, Defendant, **MERCK,** had a duty not only to provide the prescribing physicians of **PLAINTIFFS** with adequate warnings but also to provide **PLAINTIFFS** with adequate warnings regarding Vioxx® and the safety risks associated with ingestion of the drug.

16

71.    Defendant, **MERCK**, misrepresented the safety and effectiveness of Vioxx® to prescribing physicians, **PLAINTIFFS**, and the consuming public, and concealed or understated the dangerous side effects associated with ingestion of Vioxx®.

72.    As a direct and legal result of the defective condition of the Vioxx® manufactured, marketed, and distributed by Defendant, **MERCK**, and ingested by **PLAINTIFFS**, **PLAINTIFFS** have suffered and continues to suffer from serious injuries, including, but not limited to, pain and suffering, physical injuries, disability, disfigurement, embarrassment, mental anguish, loss of capacity for enjoyment of life, expenses of hospitalization, medical, nursing care and treatment, loss of earnings, loss of the ability to earn money in the future, and a shortened life span.

**WHEREFORE, PLAINTIFFS** demand judgment against Defendant, **MERCK**, for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT II

## NEGLIGENT MISREPRESENTATION

**PLAINTIFFS** adopts by reference all of the General Allegations and the previous count contained in Paragraphs 1 through 72, each inclusive, as though fully set for herein, pursuant to Rule 10(b & c), of the Federal Rule of Civil Procedure.

73.    Defendant, **MERCK**, negligently misrepresented to **PLAINTIFFS** and their prescribing physician on the safety and effectiveness of Vioxx® and/or negligently misrepresented material information regarding Vioxx® and/or negligently misrepresented adverse information regarding the safety and effectiveness of the drug Vioxx®.

74.    The negligent misrepresentations of Defendant, **MERCK,** was communicated to the prescribing physicians of **PLAINTIFFS**, with the intent that such information would reach

17

**PLAINTIFFS**, and that the effect of such representation would be that prescriptions would be written for Vioxx® for **PLAINTIFFS** and the consuming public.

75.    Defendant, **MERCK**, misrepresented safety information regarding Vioxx® with the intention and specific desire that **PLAINTIFFS** prescribing physicians or other dispensing entities, and the consuming public would rely on such information in selecting, requesting, or prescribing treatment.

76.    The Defendant misrepresented material, adverse information regarding the safety and effectiveness of Vioxx ®.

77.    Defendant, **MERCK**, made these misrepresentations and actively concealed adverse information at a time when the Defendant knew, or should have known, that Vioxx ® had defects, dangers, and characteristics that were other that what the Defendant had represented to prescribing doctors or other dispensing entities, the FDA and the consuming public, including the Plaintiffs herein.

78.    The employees, agents and/or other detail persons of Defendant, **MERCK**, perpetuated the misrepresentations of the Defendant, **MERCK,** directly and/or indirectly.

79.    The misrepresentations of Defendant, **MERCK**, constitute a continuing tort.

80.    Through the Vioxx ® product inserts, promotional materials, and aggressive marketing, Defendants, **MERCK**, continued to misrepresent the potential risks and benefits associated with Vioxx ® both before and after ingestion of the drug by **PLAINTIFFS**.

81.    Defendant, **MERCK**, had a post-sale duty to warn **PLAINTIFFS**, the consuming public, and prescribing physicians about the potential risks and complications associated with Vioxx ® in a timely manner.

82.    Defendant, **MERCK**, misrepresented the safety and efficacy of Vioxx ® in their labeling, advertising, product inserts, promotional materials, or other marketing efforts.

83.    **PLAINTIFFS** prescribing physicians, and other dispensing entities justifiably relied on and/or were induced by the misrepresentations of Defendant, **MERCK**, to the detriment of **PLAINTIFFS**.

84.    As a direct and legal result of the negligent misrepresentations of Defendant, **MERCK, PLAINTIFFS** have suffered serious injuries and mental anguish.

**WHEREFORE, PLAINTIFFS** demands judgment against Defendant, **MERCK, ,** for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT III

## FRAUD

**PLAINTIFFS,** adopt by reference all of the General Allegations and the previous counts contained in Paragraphs 1 through 84 above, each inclusive, as though fully set for herein, pursuant to Rule 10(b & c), of the Federal Rule of Civil Procedure.

85.    Defendant, **MERCK**, fraudulently or intentionally misrepresented to **PLAINTIFFS** and/or their prescribing physicians the safety and effectiveness of Vioxx® and/or fraudulently or intentionally concealed material information regarding the drug and/or fraudulently or intentionally misrepresented adverse information regarding the safety and effectiveness of Vioxx ®.

86.    The fraudulent or intentional misrepresentation of Defendant, MERCK, was communicated to the prescribing physicians of **PLAINTIFFS**, with the intent that they reach the **PLAINTIFFS**.

87.    Defendant, **MERCK**, knew that their representations were false.

88.    Defendant, **MERCK**, made the fraudulent or intentional misrepresentations and/or actively concealed this information about the risks and efficacy of Vioxx ® with the intention and specific desire that **PLAINTIFFS** prescribing physicians, and/or dispensing entities and the consuming public would rely on such false information in selecting treatment for pain and inflammation.

89.    Defendant, **MERCK**, intentionally concealed material, adverse information regarding the safety and effectiveness of their products.

90.    Defendant, **MERCK**, made these fraudulent or intentional misrepresentations and actively concealed adverse information at a time when the Defendant knew that Vioxx ® had defects, dangers, and characteristics that were other than what the Defendant had represented to the prescribing doctors or other dispensing entities, the FDA and the consuming public, including the **PLAINTIFFS** herein.  Specifically, the Defendants fraudulently or intentionally misrepresented to and/or actively concealed from **PLAINTIFFS** prescribing physician or other dispensing entities, the FDA, and the consuming public the following adverse information regarding the Vioxx ® ingested by the **PLAINTIFFS**:

   a.    Defendant, **MERCK**, failed to advise **PLAINTIFFS** prescribing physicians and others that Vioxx ® carried risks of serious adverse effects;

   b.    Defendant, **MERCK**, failed to advise **PLAINTIFFS** prescribing physicians, and others that there were serious risks of thrombotic events associated with Vioxx ®, and, instead, Defendant aggressively marketed, promoted, advertised directly to consumers, and/or sold Vioxx ® as if there was no risk; and

   c.    Defendant, **MERCK**, failed to advise **PLAINTIFFS** prescribing physicians, and others that prior studies, research, reports and/or testing had been conducted linking Vioxx ® to serious adverse actions.

91.    Defendant, **MERCK,** and its employees, agents and/or other detail persons, perpetuated the fraudulent or intentional misrepresentations and/or active concealment by the Defendants directly and/or indirectly.

92.    The fraudulent or intentional misrepresentations and/or concealment by Defendant, **MERCK,** constitute a continuing tort.

93.    Through the product insert, promotional materials, and aggressive marketing efforts of the Defendant, **MERCK,** Defendant continued to fraudulently or intentionally misrepresent the potential risks associated with Vioxx ®.

94.    Defendant, **MERCK,** , had a post-sale duty to warn **PLAINTIFFS,** other consumers, and prescribing physicians of the risks of Vioxx ® in their labeling, advertising, product inserts, promotional materials, direct-to-consumer advertising, and other marketing efforts.

95.    The Defendants, **MERCK,** fraudulently or intentionally misrepresented the safety and efficacy of Vioxx ® by their labeling, advertising, product inserts, promotional materials, direct-to-consumer advertising, and other marketing efforts.

96.    **PLAINTIFFS** prescribing physicians, and other dispensing entities justifiably relied on and/or were induced by the fraudulent or intentional misrepresentations and/or active concealment of Defendants, **MERCK,** to the detriment of **PLAINTIFFS.**

97.    As direct and legal result of the fraudulent or intentional misrepresentations of and/or active concealment by Defendant, **MERCK, PLAINTIFFS** suffered serious injuries and mental anguish.

**WHEREFORE, PLAINTIFFS** demand judgment against Defendant, **MERCK,** for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT IV

## NEW JERSEY CONSUMER FRAUD ACT (N.J.S.A. 56:8-2 et seq.)

**PLAINTIFFS** adopts by reference all of the General Allegations and the previous counts contained in Paragraphs 1 through 97 above, each inclusive, as though fully set for herein, pursuant to Rule 10(b & c), of the Federal Rule of Civil Procedure.

98.    Prescription drugs such as Vioxx ® are "merchandise," as that term is defined by N.J.S.A. 56:8-1 et seq.

99.    Defendant Merck is the researcher, developer, designer, tester, manufacturer, inspector, labeler, distributor, marketer, promoter, seller and/or otherwise released Vioxx ® into the stream of commerce.

100.    Defendant Merck knew or should have known that the use of Vioxx causes serious and life threatening injuries but failed to warn the public, including Plaintiff(s), of the same.

101.    In violation of the Act, Defendant Merck made untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts from Plaintiff(s) in product packaging, labeling, medical advertising, direct-to-consumer advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Vioxx ®. Moreover, Defendant downplayed and/or understated the serious nature of the risks associated with Vioxx ® in order to increase the sales of Vioxx ® and secure a greater share of the COX-2 market.

102.    Defendant's statements and omissions were undertaken with the intent that the FDA, physicians, and consumers, including the Plaintiff(s), would rely on the Defendant's statements and/or omissions.

22

## COUNT V

## VIOLATION OF THE ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE (AEMLD) BY DEFENDANT, MERCK.

**PLAINTIFFS** adopt by reference all of the General Allegations and the previous counts contained in Paragraphs 1 through 102 above, each inclusive, as though fully set for herein, pursuant to Rule 10(b & c), of the Federal Rule of Civil Procedure.

103.    This is an action brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine (AEMLD).

104.    Defendant, **MERCK,** is liable to **PLAINTIFFS,** who are citizens of the State of Alabama, pursuant to AEMLD.

105.    Defendant **MERCK,** is in the business of manufacturing, distributing, and marketing Vioxx ® in the State of Alabama.

106.    Defendant, **MERCK,** manufactured, distributed, and marketed Vioxx ® in a defective condition, and unreasonably dangerous manner.

107.    Defendant, **MERCK,** placed the Vioxx ® in the line of commerce in the State of Alabama. At the time Vioxx ® was released in the line of commerce in the State of Alabama, the Defendant, **MERCK,** knew or should have known of the dangerous effects of Vioxx ®.

108.    Defendant, **MERCK,** negligently and/or fraudulently failed to give reasonable and adequate warning of danger of Vioxx ® known to Defendant, **MERCK,** or would have been known to the Defendant by exercising reasonable care.

109. As such, **PLAINTIFFS** were injured and damaged as a proximate result of Defendant, **MERCK,** decision to place Vioxx ® in the line of commerce in the State of Alabama.

**WHEREFORE, PLAINTIFFS** demand judgment against Defendant, **MERCK**, for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT VI

### NEGLIGENCE

**PLAINTIFFS** adopts by reference all of the General Allegations and the previous counts contained in Paragraphs 1 through 109 above, each inclusive, as though fully set for herein, pursuant to Rule 10(b & c), of the Federal Rule of Civil Procedure.

110. At all times material hereto, Defendant, **MERCK**, had a duty to **PLAINTIFFS** to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, labeling, assembling, packaging, distribution and sale of Vioxx®.

111. Defendant, **MERCK**, were negligent in their actions, misrepresentations, and omissions toward **PLAINTIFFS** and their prescribing physicians in the following ways:

a. Defendants, **MERCK**, failed to include adequate warnings with the drug that would have alerted consumers and physicians to the potential risks and serious side effects of Vioxx ®; and

b. Defendant, **MERCK**, failed to adequately and properly test Vioxx ® before placing the drug the market;

c. Defendant, **MERCK**, failed to provide adequate post-marketing warnings or instructions after the Defendants knew of the significant risks of personal injury and death as identified herein among other serious side effects from the use of Vioxx ®;

d. Defendant, **MERCK**, , failed to adequately warn **PLAINTIFFS** that Vioxx ® should not be used in conjunction with any risk factors for these adverse effects such as family history of ischemic heart disease or risk factors for ischemic cardiovascular disease;

e. Defendant, **MERCK**, failed to adequately disclose and warn **PLAINTIFFS** nor insured that **PLAINTIFFS** understood the risk of adverse events and death by ingesting Vioxx ®; and

24

f.  Defendant, **MERCK**, failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx ® ingestion as described therein.

112.  The Defendant knew or should have known that Vioxx ® caused unreasonably dangerous risks and serious side effects of which **PLAINTIFFS** were unaware. Defendant, **MERCK**, nevertheless aggressively advertised, marketed, sold and distributed Vioxx ® knowing that there were safer methods and products for treatment of pain due to inflammation.

113.  As a direct and legal result of the negligence of Defendant, **MERCK**, **PLAINTIFFS**, suffered serious injury and mental anguish, and **PLAINTIFFS** seeks all damages allowed under the law.

**WHEREFORE, PLAINTIFFS** demand judgment against Defendant, **MERCK**, for damages, as well as costs of this action and a trial by jury of all issues to be tried.

## COUNT VII

## STRICT LIABILTY

**PLAINTIFFS,** adopts by reference all of the General Allegations and the previous counts contained in Paragraphs 1 through 113 above, each inclusive, as though fully set for herein, pursuant to Rule 10(b & c), of the Federal Rule of Civil Procedure.

114.  The Vioxx® ingested by **PLAINTIFFS** was defective and unreasonably dangerous when it left the possession of the Defendant, **MERCK**, in that:

a.  When placed in the stream of commerce, Vioxx® contained unreasonably dangerous design defects and were not reasonably safe as intended to be used, subjecting **PLAINTIFFS** to risk that exceeded the benefits of the drug;

b.  When placed in the stream of commerce, Vioxx® was defective in design and formulation, making use of the drug more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with ailments suffered by **PLAINTIFFS.**

25

c.   Vioxx® contained insufficient warnings to alert **PLAINTIFFS**, consumers, and prescribing physicians of severe and life threatening complications and side effects including, but not limited to arterial thrombus;

d.   There was misleading advertising and promotion concerning the benefits of using Vioxx®;

e.   There were inadequate post-marketing warnings or instructions for Vioxx® because, after Defendant, **MERCK**, knew or should have known of the significant risks associated with the use of Vioxx®, Defendant, **MERCK**, and its employees failed to provide adequate warnings to **PLAINTIFFS**, consumers, and prescribing physicians, and continued to aggressively promote and advertise direct-to-consumers the sale and use of Vioxx®; and

f.   The Vioxx® ingested by **PLAINTIFFS** had not been materially altered or modified prior to use.

115.   **PLAINTIFFS** used the drug for its intended purpose of pain management.

116.   Defendant, **MERCK**, as a manufacturer of a prescription drug, is held to the level of knowledge of an expert in the field.

117.   The prescribing physicians of **PLAINTIFFS** did not have substantially the same knowledge as Defendant, **MERCK**, or knowledge that would have been gleaned from an adequate warning from Defendant, **MERCK**,

118.   The warnings that were given by Defendant, **MERCK**, through its employees, to prescribing physicians, consumers, and **PLAINTIFFS** were not accurate, clear, and/or unambiguous.

119.   Defendant, **MERCK**, and its employees, had a continuing duty to warn the **PLAINTIFFS** consumers and prescribing physicians of the dangerous risks and reactions associated with Vioxx®.

120.   **PLAINTIFFS** could not have discovered any defect in the product through the exercise of care.

26

121.    As a direct and legal result of the defective condition of Vioxx® and inadequate warnings, **PLAINTIFFS**, suffered serious personal injury and mental anguish, has sustained economic losses, and expended (and/or may in the future be required to expend) fair and reasonable expenses for necessary health care, attention and services, and has and/or may incur incidental and related expenses.

**WHEREFORE, PLAINTIFFS** demand judgment against Defendant, **MERCK,** for damages, as well as costs for this action and a trial by jury for all issues to be tried.

## COUNT VIII

## BREACH WARRANTIES

**PLAINTIFFS,** adopts by reference all of the General Allegations and the previous counts contained in Paragraphs 1 through 121 above, each inclusive, as though fully set for herein, pursuant to Rule 10(b & c), of the Federal Rule of Civil Procedure.

122.    At the time Defendant, **MERCK,** placed Vioxx ® into the stream of commerece, it knew of the use for which the drug was intended, and expressly and impliedly warranted the products to be merchantable quality and to be safe and fit for such use.

123.    **PLAINTIFFS** reasonably relied upon the expertise, skill, judgment and knowledge of Defendant, **MERCK,** and upon the express and/or implied warranty that the drug was of merchantable quality and fit for its intended use.

124.    Vioxx ® was not merchantable quality and was not safe or fit for its intended because the product was, and is, unreasonably dangerous and unfit for the ordinary purposes for which it was used, in that it caused injury to **PLAINTIFFS** and the consuming public far beyond any acceptable or warned side effect. Vioxx ® was unduly dangerous in its expected use and did cause undue injury to **PLAINTIFFS.**

27

125. As a direct and proximate result of Defendant's, MERCK, breach of both its implied and expressed warranties, **PLAINTIFFS** has suffered injuries and sustained damages.

126. As a direct and proximate result of breach of warranty by Defendant, **MERCK**, **PLAINTIFFS** have sustained and will continue to sustain serious and permanent injuries; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement, mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to treating physicians; physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future, expense of hospitalization, medical and nursing care and treatment; medical monitoring in past and in the future; fear and mental anguish concerning future medical problems including but not limited to those associated with their injured and as otherwise set forth under this Complaint.

**WHEREFORE, PLAINTIFFS** demand judgment against Defendant, **MERCK,** for damages, as well as costs for this action and a trial by jury for all issues to be tried.

## COUNT IX

## <u>PUNITIVE DAMAGES</u>

**PLAINTIFFS** adopts by reference all of the General Allegations and the previous counts contained in Paragraphs 1 through 121 above, each inclusive, as though fully set for herein, pursuant to Rule 10(b & c), of the Federal Rule of Civil Procedure.

127. **PLAINTIFFS** contends that the conduct of the Defendant, **MERCK**, with respect to its developing, manufacturing, selling, distributing, labeling, marketing and/or promoting Vioxx ® (rofecoxib) which led to injuries suffered by **PLAINTIFFS**, constitutes gross negligence in that the conduct of Defendant, **MERCK**, was so reckless or wanting in care

28

that it constituted a conscious disregard or indifference to the life, safety, or rights of **PLAINTIFFS** and others who ingested Vioxx ®.

128. **PLAINTIFFS** further contends that Defendant, **MERCK,** is responsible for any conduct of its employees, principals, and/or agents, including its sales representatives, and Defendant, **MERCK,** as the employer, actively and knowingly participated in such conduct; the officers, directors, and/or managers of Defendant, **MERCK,** condoned, ratified, or consented to such conduct; and such gross negligence, reckless conduct, and want in care contributed to the loss, damages, and/or injury suffered by **PLAINTIFFS** herein.

129. In particular, as indicated in the voluminous evidence proffered in this case and developed in the national state and federal court proceedings, Defendant, **MERCK,** engaged in a scheme to conceal the serous cardiovascular thromboembolic adverse events (such as heart attacks, angina pectoris, and peripheral vascular events) associated with ingestion of Vioxx ® in the following manner:

a. Defendant, **MERCK,** ignored warning signs of the potential for Vioxx ® to cause heart attacks and strokes prior to introduction of the drug to the market in 1999 with the knowledge that full disclosure of the potential safety risks associated with Vioxx ® would "kill the drug" and prevent it from being approved fro marketing in the United States:

b. Defendant, **MERCK,** concealed information with regard to safety risks associated with Vioxx ® in its direct-to-consumer marketing, press releases to the public, detailing information provided to prescribing physicians, scientific information provided to physicians and the scientific community, and in a number of other ways with the knowledge that an adequate warning with regard to the cardiovascular risks associated

29

with Vioxx ® would result in the drug being either pulled from the market or not being prescribed as often by physicians.

c.    Defendant, **MERCK**, failed to fund an adequate study to fully assess the cardiovascular risks of Vioxx ®.

d.    Defendants, **MERCK**, engaged in an aggressive effort to silence those who were critical of Vioxx ® and who attempted to warn others of the safety risks that users of Vioxx ®, such as **PLAINTIFFS**, faced by ingesting the drug through a number of tactics, including intimidation of academics who voiced negative opinions about the safety of Vioxx ®, by making financial payments to physicians (through the guise of preceptorships, consultant agreements, clinical studies, etc.) in an effort to encourage their prescription of Vioxx ® and to discourage negative comments.

e.    Defendant, **MERCK**, engaged in conduct calculated to delay changes to the labeling for Vioxx ® and to undermine the warnings communicated in such labeling in order to prevent prescribing physicians and patients, such as prevented **PLAINTIFFS** from learning the true safety risks associated with the ingestion of Vioxx ®.

f.    Defendant, **MERCK**, repeatedly communicated false information to prescribing physicians, patients, and the general public (despite several admonishments from the FDA) calculated by Defendant, **MERCK,** to dispel emerging concerns about the safety of Vioxx ®, including, but not limited to, the unsubstantiated (and unsupportable) claim that Naproxen is cardioprotective and that Vioxx had a "favorable cardiovascular safety profile" (in an effort to explain away the substantial heart attack and stroke risks noted in the VIGOR trial in 2000), through various activities including direct-to-consumer marketing, detailing of prescribing physicians, audio conferences, hiring

30

consultants and other third parties to speak on their behalf, and publishing of articles and other information in the scientific literature.

**WHEREFORE, PLAINTIFFS**, demands judgment against Defendants, **MERCK,** for punitive damages as the conduct of Defendant, **MERCK,** with regard to the developing, manufacturing, selling, distributing, labeling, marketing and/or promoting Vioxx ® constituted gross negligence in that the conduct of Defendant, **MERCK,** was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of **PLAINTIFFS,** and others who ingested Vioxx®.

## DEMAND FOR JURY TRIAL

**PLAINTIFFS** hereby demand a trial by jury on all issues so triable.

Dated this _____ day of September 2006.

Respectfully Submitted,

**PARKS & CRUMP, L.L.C.**
240 N. Magnolia Drive
Tallahassee, Florida 32301
(850) 224-6400
Attorneys for Plaintiff

**Daryl D. Parks, Esquire**
FBN: 0054097

31